IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

MARIA CRISTINA VEGA AYALA,
et al.,

      Plaintiffs,

v.                                No. 1:24-cv-00816-MIS-JHR

KRISTI NOEM[1], United States Secretary
of Homeland Security, et al.,

      Defendants.

**ORDER DENYING MOTION TO DISMISS**

**THIS MATTER** is before the Court on Defendants' Motion to Dismiss, ECF No. 7, filed October 15, 2024. Plaintiffs filed a response, ECF No. 19, to which Defendants replied, ECF No. 20. Upon due consideration of the parties' submissions, the record, and the relevant law the Court will **DENY** Defendants' Motion to Dismiss.

## I.    BACKGROUND

This case concerns United States Citizenship and Immigration Services (USCIS)'s adjudication (or, more accurately, lack thereof) of U visa petitions. Plaintiffs are nineteen[2] noncitizens who have filed petitions for nonimmigrant status under 8 U.S.C. § 1101(a)(15)(U). Such "U" visas are available for noncitizens who are the victim of certain qualifying crimes, have suffered "substantial physical or mental abuse" as a result thereof, and have been helpful in the investigation and/or prosecution of that crime. *Id.* A noncitizen granted U visa nonimmigrant status

---

[1] Per Federal Rule of Civil Procedure 25, Kristi Noem is automatically substituted as United States Secretary of Homeland Security.

[2] This case began with thirty-two plaintiffs. *See* Compl. (Aug. 14, 2024), ECF No. 1. Since the complaint was initially filed a number of plaintiffs have had their applications adjudicated, and their claims mooted, and have accordingly been dismissed from the case. *See* Order Granting Pls.' Unopposed Mot. Dismiss Parties (Feb. 13, 2025), ECF No. 23; Order Granting Pls.' Second Unopposed Mot. Dismiss Parties (Mar. 17, 2025), ECF No. 27.

will be provided with employment authorization documents ("EADs") pursuant to statute. *Id.* § 1184(p)(3)(B); *see also* 8 C.F.R. § 214.14(c)(7). The U visa application process is managed by USCIS, an agency within the Department of Homeland Security (DHS).

Congress has placed a cap on U visas of 10,000 annually, *id.* § 1184(p)(2), and demand far exceeds supply, *see* Compl. ¶ 51. Accordingly, DHS created a waiting list via implementing regulations. 8 C.F.R. § 214.14(d)(2). The regulation provides that "[a]ll eligible petitioners who, due solely to the cap, are not granted U-1 nonimmigrant status *must* be placed on a waiting list and receive written notice of such placement." *Id.* (emphasis added). While a petitioner is on the waiting list, "USCIS *will* grant deferred action or parole" to such petitioner and "in its discretion, *may* authorize employment" for such petitioner. *Id*. (emphasis added). A petitioner also will not accrue unlawful presence while on the waiting list, but can be removed therefrom at the discretion of USCIS. *Id.* § 214.14(d)(3). For many years, the waiting list until final adjudication was the only process available for U visa petitioners.

Separately, under the statute, DHS "may grant work authorization to any alien who has a pending, bona fide application for nonimmigrant status under section 1101(a)(15)(U)[.]" 8 U.S.C. § 1184(p)(6). DHS did not implement a regime to grant work authorization under this provision until 2021. On June 14, 2021, DHS published policy guidance detailing how bona fide determinations under 8 U.S.C. § 1184(p)(6) would be made. U.S. Citizenship & Immigr. Servs., Policy Alert: Bona Fide Determination Process for Victims of Qualifying Crimes, and Employment Authorization and Deferred Action for Certain Petitioners (June 14, 2021). According to the guidance, published as part of the USCIS Policy Manual, USCIS now "first determines whether a pending petition is bona fide." *See* U.S. Citizenship & Immigr. Servs., Policy Manual, Volume 3, Part C, Chapter 5 – Bona Fide Determination Process,

https://www.uscis.gov/policy-manual/volume-3-part-c-chapter-5 [hereinafter USCIS Policy Manual Ch. 5]. This action is hereafter referred to as the Bona Fide Determination ("BFD"). "Second, USCIS, in its discretion, determines whether the petitioner poses a risk to national security or public safety, and otherwise merits a favorable exercise of discretion." *Id.* If USCIS makes a favorable determination at this second step, then it will grant the petitioner an EAD and deferred action. *Id.* Together, these two actions are the "BFD process." The guidance describes the BFD process as an initial step in the U visa procedure; generally, only if a petitioner is *not* granted a BFD EAD will they then be considered for placement on the waiting list ("waiting list determination" or "WLD"). *See id.* ("USCIS generally does not conduct waiting list adjudications for noncitizens who USCIS grants BFD EADs and deferred action to; these petitioners' next adjudicative step is final adjudication when space is available under the statutory cap.").

Plaintiffs filed the instant action on August 14, 2024. All plaintiffs are principal or derivative[3] U visa petitioners who have been waiting between 17 and 78 months (as of this filing) for action on their applications and have yet to receive BFDs or WLDs.[4] Their Complaint asserts three causes of action. Count One seeks a declaratory judgment that "Defendants' lack of action is against the law and violates the [Administrative Procedure Act (APA)]." *Id.* ¶¶ 89-91. Count Two (the "APA Claims") alleges violation of 5 U.S.C. § 706(1) by Defendants' inaction in performing its "nondiscretionary obligation[s]" to determine U visa petitioners' eligibility, to determine if U visa petitions are bona fide, to adjudicate applications for EADs, and to make these determinations within a reasonable time, and in "Defendants' failure to make waiting list eligibility determinations for Plaintiffs who would receive U nonimmigrant status but for the statutory cap." Compl. ¶¶ 92-

---

[3] Principal U visa petitioners may file derivative petitions on behalf of certain qualifying family members. 8 C.F.R. § 214.14(f)(1).

[4] These numbers are based on the remaining nineteen plaintiffs. *See* Compl. ¶¶ 64-65, 68, 71, 73-74, 77-78, 80-83.

99. Plaintiffs further allege that Defendants' inaction is arbitrary, capricious, and in excess of statutory authority. *Id.* ¶ 100 (citing 5 U.S.C. § 706(c)(2)). Count Three seeks a writ of mandamus under 28 U.S.C. § 1361 to compel DHS to perform its duties owed to Plaintiffs, namely, adjudication of their petitions for U visas and placement on the waitlist or issuance of a BFD, and grant of associated EADs and deferred action. *Id.* ¶¶ 101-110.

All Defendants moved to dismiss on October 15, 2024. Mot. Dismiss ("Mot."), ECF No. 7. Plaintiffs responded on November 27, 2024, Pls.' Resp. Opp'n Defs.' Mot. Dismiss ("Resp."), ECF No. 19. Defendants replied on December 13, 2024. Defs.' Reply Supp. Mot. Dismiss ("Reply"), ECF No. 20.

## II.    LEGAL STANDARDS

Defendants move to dismiss Plaintiffs' claims under both Federal Rule of Civil Procedure 12(b)(6) and 12(b)(1). *See generally* Mot.

### A.    Fed. R. Civ. P. 12(b)(6)

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a party may move for dismissal if the complaint fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This pleading standard does not impose a probability requirement, but it demands "more than a sheer possibility that a defendant has acted unlawfully." *Id*. Although the court must accept the truth of all properly alleged facts and draw all reasonable inferences in the plaintiff's favor, the plaintiff still "must nudge the claim across the line from conceivable or speculative to plausible." *Brooks v. Mentor Worldwide LLC*, 985 F.3d 1272, 1281 (10th Cir. 2021).

The complaint must provide "more than labels and conclusions" or merely "a formulaic recitation of the elements of a cause of action," because "courts are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (citation omitted). Indeed, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable." *Id.* at 556. The court's role when reviewing "a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991).

### B.    Fed. R. Civ. P. 12(b)(1)

"Federal courts are courts of limited jurisdiction; they are empowered to hear only those cases authorized and defined in the Constitution which have been entrusted to them under a jurisdictional grant by Congress." *Henry v. Off. of Thrift Supervision*, 43 F.3d 507, 511 (10th Cir. 1994). "[T]he party invoking federal jurisdiction," generally the plaintiff, "bears the burden of establishing its existence." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 104 (1998). Rule 12(b)(1) allows defendants to raise the defense of the court's "lack of subject-matter jurisdiction" by motion. Fed. R. Civ. P. 12(b)(1).

Rule 12(b)(1) motions to dismiss for lack of subject-matter jurisdiction "generally take one of two forms: (1) a facial attack on the sufficiency of the complaint's allegations as to subject matter jurisdiction; or (2) a challenge to the actual facts upon which subject matter jurisdiction is based." *Ruiz v. McDonnell*, 299 F.3d 1173, 1180 (10th Cir. 2002). A facial attack "questions the sufficiency of the complaint," and when "reviewing a facial attack . . . a district court must accept the allegations in the complaint as true." *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995), *abrogated on other grounds by Cent. Green Co. v. United States*, 531 U.S. 425, 437 (2001).

## III.    DISCUSSION

### A.    Parties' Arguments

Defendants move to dismiss Plaintiffs' entire case for lack of jurisdiction and failure to state a claim. First, Defendants argue that the grant of EADs and deferred action following BFDs are discretionary actions that are barred from this Court's review pursuant to 8 U.S.C. § 1252(a)(2)(B)(ii), which states that courts shall not have jurisdiction to review any "decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security." Mot. at 5-6. Defendants point to the use of the word "may" in 8 U.S.C. § 1184(p)(6) as evidence that the BFDs and EADs that Plaintiffs seek clearly fall within the jurisdictional bar at § 1252(a)(2)(B)(ii) and collect cases indicating that "may" connotes discretion. *Id.* at 6. They further argue that this non-reviewability necessarily extends to the "pace" at which USCIS makes such determinations because "the scope of USCIS's discretion includes its 'process' in adjudicating interim U visa benefits." *Id.* at 7-9. Defendants contend that the BFDs themselves are likewise unreviewable as "factual determination[s] predicate to USCIS's exercise of its discretion to issue an EAD or deferred action under § 1184(p)(6)." *Id.* at 10-11 (relying on *Patel v. Garland*, 596 U.S. 328, 347 (2022)).

Defendants also argue that Plaintiffs lack standing to pursue a claim seeking BFDs because "a BFD alone does nothing" absent USCIS's favorable exercise of discretion to grant EAD and deferred action. *Id.* at 13. Compelling a BFD, therefore, would not redress the Plaintiffs' alleged injuries related to the lack of those benefits. *Id.* As to deferred action decisions, Defendants argue that such determinations are precluded from the Court's review because (1) they are "simply part of the process for obtaining employment authorization, which is discretionary," and (2) they fall

within 8 U.S.C. § 1252(g)'s prohibition on review of any decision or action related to removal. *Id.* at 14-15. Defendants additionally assert that, to the extent Plaintiffs seek WLDs, such claim is unripe and fails to state a claim because under USCIS policy Plaintiffs are not entitled to WLDs until they have received BFDs—a BFD is a necessary predicate to a WLD. *Id.* at 15-16, 20-21. Further, "[b]ecause Plaintiffs are not presently entitled to WLDs, there is no 'delay' to speak of and any claim asserting an unreasonable delay would fail as a matter of law." *Id.* at 16. And even if Plaintiffs did become eligible for WLDs, Defendants argue, any delay in receiving those determinations is "purely speculative at this point." *Id.* at 21.

Finally, Defendants argue that Plaintiffs have been improperly joined and urge the Court to sever and dismiss the claims of all but the lead Plaintiff. *Id.* at 22. Plaintiffs' claims, they contend, "do not arise from the same transaction, occurrence, or series of transactions or occurrences" as required under Federal Rule of Civil Procedure 21. *Id.* at 22-23. Plaintiffs have "suffered a variety of different crimes over various times" and vary widely in the amount of time that has elapsed since they filed their U visa petitions. *Id.* at 23. It is not sufficient, according to Defendants, that Plaintiffs allege a common policy and practice. *Id.* at 24. The Plaintiffs' circumstances are simply too factually distinct and individualized to present a common question of law or fact. *Id.* at 24-25.

Plaintiffs respond, first, that 8 U.S.C. § 1184(p)(6) is ambiguous enough to sustain the presumption that USCIS's delay in processing Plaintiffs' BFDs is reviewable. Resp. at 4-5. Plaintiffs' claims are related not "to Defendant[s'] ultimate discretion to grant or deny any interim benefits," but to the pace of processing, which the statute "does not unambiguously" regulate. *Id.* (citing *Barrios Garcia v. U.S. Dep't of Homeland Sec.*, 25 F.4th 430 (6th Cir. 2022)). As the Sixth Circuit held in *Barrios Garcia*, Plaintiffs argue, § 1184(p)(6) does not unambiguously commit the

issuance of work authorizations to DHS's discretion for § 1252(a)(2)(B)(ii) purposes, despite the use of the word "may." *Id.* at 5-6. Nor does § 701(a)(2) of the APA preclude review here, Plaintiffs assert. The statute and BFD process guidance supply the requisite guidance and standards needed to assess whether the adjudication of benefits has been unreasonably delayed. *Id.* at 6 (quoting *Barrios Garcia*, 25 F.4th at 447).

Plaintiffs also resist Defendants' argument that the BFD process renders its WLD claims unripe, pointing out that "[a] future administration could rescind the BFD process before any of the Plaintiffs' applications are adjudicated by USCIS, meaning the Plaintiffs['] injuries could be repeated while evading review." *Id.* at 9. Plaintiffs emphasize that the BFD process did not "amend or change Defendants' duty to Plaintiffs under 8 C.F.R. § 214.14(d)(2)," which requires that eligible petitioners be placed on the waitlist. The BFD policy guidance is insufficient, therefore, to render Plaintiffs' WLD claims unripe. *Id.* at 9-10, 13. Plaintiffs argue that this Court has jurisdiction to review Plaintiffs' WLD claims under 5 U.S.C. § 706(1) because the placement of eligible petitioners on the waitlist is mandatory not discretionary, and no statute bars review. *Id.* at 11-13. Plaintiffs contend that, under the motion to dismiss standard, they have sufficiently stated their claims for relief and should be permitted to proceed to discovery. *Id.* at 14-15.

Finally, Plaintiffs argue that their claims are properly joined under Rule 20 and should not be severed. They emphasize that Rule 20 joinder is to be construed liberally, with consideration for convenience, potential prejudice to the parties, efficiency, and judicial economy. *Id*. at 15-16. Here, Plaintiffs argue, their claims involve a common question of law and fact because they are all petitioning for U visas and seeking BFDs and WLDs. *Id.* at 16. Plaintiffs contend that the factual differences in timing are not germane at this stage, and severance would "unnecessarily multiply litigation." *Id.* "The facts specific to each Plaintiff speak to Defendants' discretionary ability to

ultimately grant or deny the individual's U visa petition, not to Defendants' obligation to adjudicate the petitions and issue [WLDs] within a reasonable period of time." *Id.* at 18. Severance would prejudice both sides of this dispute. *Id.* at 18-19.

In reply, Defendants fault Plaintiffs for their reliance on *Barrios Garcia*, which they contend was "wrongly decided." Reply at 2. Defendants argue that review is precluded by § 701(a)(1) of the APA and the jurisdictional bar at 8 U.S.C. § 1252(a)(2)(B)(ii)—the Sixth Circuit's focus on § 701(a)(2) of the APA was misplaced. *Id.* at 2-4. The question of meaningful standards for review is irrelevant here, Defendants argue, because the agency actions at issue fall within the ambit of § 1252(a)(2)(B)(ii) as discretionary acts. *Id.* at 4-5. Defendants further contend that Plaintiffs fail to account for the Supreme Court's decision in *Patel v. Garland*, 596 U.S. 328 (2022), which was issued after *Barrios Garcia* and held that § 1252(a)(2)(B)(i)'s "prohibition on judicial review 'encompasses any and all decisions relating to the granting or denying of discretionary relief,' including predicate, nondiscretionary factual determinations that an agency must make before granting discretionary relief." *Id.* at 5 (quoting *Patel*, 596 U.S. at 337). Defendants re-assert that Plaintiffs lack standing on their WLD claim because they are not presently entitled to WLDs, and any alleged injury therefore hinges on a "contingent future determination" (namely, the BFD process). *Id.* at 7-8. Defendants additionally argue that Plaintiffs have not alleged any credible threat related to ICE arrest or detention, or removal, and have therefore failed to establish impending injury from their lack of deferred action. *Id.* at 8. Defendants also renew their argument that Plaintiffs' claims are not properly joined. Allegations that USCIS follows the same routine with regard to each to Plaintiff are insufficient, and Plaintiffs lack the requisite factual overlap. *Id.* at 9-10. Defendants point the Court to other multi-plaintiff U

visa cases where the plaintiffs were severed on account of the many differences in the facts underlying their petitions. *Id.* at 12.

## B.     Analysis[5]

The Court's analysis proceeds in several parts. Section 1 briefly describes the primary statutes governing the case. The following sections address in turn the three parts of the U visa process that form the basis of Plaintiffs' claims: waiting list determinations (Section 2), bona fide determinations (Section 3), and employment authorization document determinations (Section 4). As explained fully below, the Court concludes that Plaintiffs have adequately stated a claim for relief with regard to all three and that review of those claims is within the subject matter jurisdiction of the Court. Finally, Section 5 turns to, and rejects, Defendants' argument that Plaintiffs' claims should be severed.

### 1.     *Legal Framework*

Because this case involves several complicated statutory frameworks, some table setting is in order. First, the APA. Under 5 U.S.C. § 701(a), the APA's judicial review provisions do *not* apply where "statutes preclude judicial review," (a)(1), or where "agency action is committed to agency discretion by law," (a)(2). For those cases not excluded under Section 701, Section 702 extends the right of judicial review to "person[s] suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute[.]" 5 U.S.C. § 702. Section 706, governing scope of review, provides that a reviewing court shall "compel agency action unlawfully withheld or unreasonably delayed," *id.* § 706(1), and "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary,

---

[5] Although Defendants purport to move for dismissal of Plaintiffs' entire action, *see* Mot. at 2; Reply at 1, they make no argument whatsoever concerning the Declaratory Judgment Act and Mandamus Act. The Court will therefore assume that Defendants' attack is directed at Count Two (the APA Claims).

capricious, an abuse of discretion, or otherwise not in accordance with law," *id.* § 706(2)(A), or "in excess of statutory jurisdiction, authority, or limitations," *id.* § 706(2)(C). To state a claim for unreasonable delay under Section 706(1), a plaintiff must assert "that an agency failed to take a *discrete* agency action that it is *required to take*[,]" *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004), and that the delay was unreasonable, *Da Costa v. Imm. Inv. Prog. Off.*, 80 F.4th 330, 340 (D.C. Cir. 2023).

The Supreme Court has repeatedly emphasized that "[e]xecutive determinations generally are subject to judicial review." *Kucana v. Holder*, 558 U.S. 233, 251 (2010). The presumption of judicial review of agency action can only be "dislodge[d]" with "clear and convincing evidence" that Congress intended to preclude review in a particular instance. *Id.* Title 8, United States Code, Section 1252 ("Judicial review of orders of removal") is a jurisdiction-stripping statute. *Bouarfa v. Mayorkas*, 604 U.S. 6, 10 (2024). It precludes review of, *inter alia*, "any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security," regardless of whether such decision or action "is made in removal proceedings." 8 U.S.C. § 1252(a)(2)(B), (B)(ii). The U visa statute is within the subchapter referred to in § 1252(a)(2)(B)(ii). *See* 8 U.S.C. § 1184(p). As described above, *supra* Part I, statutes define U visa eligibility, 8 U.S.C. § 1101(a)(15)(U), and specify the procedures for obtaining such visas, set the 10,000 annual cap, require the issuance of EADs for U visa holders, and allow for DHS to grant EAD to a petitioner with a "pending, bona fide application," *id.* § 1184(p). The U visa waiting list is a creature of regulation. 8 C.F.R. § 214.14(d)(2). And the BFD process was born of policy guidance. *See* USCIS Policy Manual Ch. 5.

### 2.    *Waiting List Determinations*

As this Court and many of its sister courts have previously held, this Court has jurisdiction over Plaintiffs' claim seeking WLDs.[6] Section 1252(a)(2)(B)(ii) neither deprives the Court of jurisdiction directly nor through Section 701(a)(1) of the APA. Furthermore, Plaintiffs' WLD claim is not rendered unripe by the existence of the BFD policy process. Accordingly, Defendants' Motion is DENIED as to the WLD claim.

Section 1252(a)(2)(B)(ii) is inapplicable here. As set forth above, that statute bars judicial review of decisions or actions "specified under this subchapter to be in the discretion of the Attorney General or the Secretary or Homeland Security[.]" 8 U.S.C. § 1252(a)(2)(B)(ii). The Supreme Court has held that 1252(a)(2)(B)(ii) by its plain language does not apply to decisions specified as discretionary by *regulation* as opposed to statute. *Kucana*, 558 U.S. at 251. The waiting list is entirely borne of regulation. 8 C.F.R. § 214.14(d)(2); *see also* Mot. at 3 (referring to the "regulatory waiting list"). This alone ends the inquiry—1252(a)(2)(B)(ii) cannot bar review.

Moreover, even if 1252(a)(2)(B)(ii) did apply to regulations, the Secretary's placement of eligible petitioners on the waiting list and attendant grant of deferred action or parole is plainly mandatory, not discretionary. The regulation is unequivocal: "[a]ll eligible petitioners who, due solely to the cap, are not granted U-1 nonimmigrant status *must* be placed on a waiting list and receive written notice of such placement." 8 C.F.R. § 214.14(d)(2) (emphasis added). And "USCIS *will* grant deferred action or parole" to a wait-listed petitioner. *Id.* (emphasis added). DHS has therefore "impelled itself" to place eligible petitioners on the waitlist. *Barrios Garcia*, 25 F.4th at 443; *Gonzalez v. Cuccinelli*, 985 F.3d 357, 374 n.10 (4th Cir. 2021) ("[T]he agency has committed itself by regulation to place eligible applicants on the waiting list.").

---

[6] *See, e.g.*, *Tista v. Jaddou*, 577 F. Supp. 3d 1219, 1227-28 (D.N.M. 2021); *M.J.L. v. McAleenan*, 420 F. Supp. 3d 588, 595-97 (W.D. Tex. 2019); *Patel v. Cissna*, 400 F. Supp. 3d 1373, 1377 (M.D. Ga. 2019).

Defendants' primary argument regarding WLDs is that any such claim is not ripe for review. Mot. at 20-22. Ripeness is a justiciability doctrine derived from the case or controversy clause of Article III. *Auto-Owners Ins. Co. v. Bolt Factory Lofts Owners Ass'n*, 823 F. App'x 686, 690 (10th Cir. 2020). The Tenth Circuit has "distilled Article III's ripeness requirement into a two-factor analysis, examining (1) 'the fitness of the issue for review,' and (2) 'the hardship to the parties' of withholding judicial review." *Travelers Cas. Ins. Co. of Am. v. A-Quality Auto Sales, Inc.*, 98 F.4th 1307, 1314 (10th Cir. 2024) (internal citations omitted). As to the first factor, for an action to be ripe for review it cannot be "dependent on 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Trump v. New York*, 592 U.S. 125, 131 (2020) (quoting *Texas v. United States*, 523 U.S. 296, 300 (1998)). The second factor considers "whether the challenged action creates a direct and immediate dilemma for the parties." *Auto-Owners Ins. Co.*, 823 F. App'x at 690 (internal citations omitted).

Defendants argue that Plaintiffs' claim is unripe because Plaintiffs are not entitled to a WLD before the BFD process has been completed (and may never be entitled to the former depending on the outcome of the latter). The Court is unpersuaded. Defendants artificially inflate the certainty surrounding the BFD process, describing the BFD as a "preliminary adjudicative step," Mot. at 16, and the WLD process as a "second chance" thereafter, *id.* at 20. The Court does not doubt that the process often works this way—but it is not at all clear that it *always* does. The Policy Manual itself hedges on this matter: "USCIS *generally* does not conduct waiting list adjudications for noncitizens who USCIS grants BFD EADs and deferred action to . . . ." USCIS Policy Manual Ch. 5 (emphasis added). Clearly the chronology of the process is not as fixed as Defendants suggest. Indeed, this is unsurprising given the BFD process's status as a creature of policy guidance: "USCIS clearly wields sole and unadulterated discretion to set forth, abide by,

and eliminate the BFD process." *Barrios Garcia*, 25 F.4th at 441. Even assuming USCIS is currently hewing exactly to the BFD process, as Defendants suggest, the policy guidance could be rescinded at any time. It is worth noting that the current administration is not the one that put this policy in place. *See id.* ("A future administration could rescind the BFD process just as easily as this administration established it; the program could be retracted before any of Plaintiffs' applications are adjudicated by USCIS."). For these reasons, Plaintiffs' WLD claim is not made unripe by the existence of the BFD process.[7]

### 3.    *Bona Fide Determinations*

Whether Plaintiffs' BFD claim is barred by Section 1252(a)(2)(B)(ii) and Section 701 of the APA is a closer question. This Court, however, is persuaded by the Sixth Circuit's "back-to-front" interpretation of 8 U.S.C. § 1184(p)(6): whether a pending application is "bona fide" is a threshold determination that USCIS must make before any discretion enters the equation. The Court also declines to broaden the meaning of Section 1252(a)(2)(B)(ii) to encompass BFDs as part of EAD decisions, as Defendants suggest. Defendants' Motion is therefore DENIED as to Plaintiffs' BFD claim.

The Court first addresses whether the BFD is itself discretionary, rendering Plaintiffs' claim barred by Section 701(a)(1) of the APA and 1252(a)(2)(B)(ii). The relevant statute states: "The Secretary may grant employment authorization documents to any alien who has a pending, bona fide application [for a U visa]." 8 U.S.C. § 1184(p)(6). The Fourth and Sixth Circuits have reached opposing conclusions as to whether a federal court has jurisdiction to adjudicate a claim for unreasonable delay in agency action under this statute. In *Gonzalez v. Cuccinelli* (decided prior to implementation of the BFD policy guidance), the Fourth Circuit held that such claims were

---

[7] Defendants alternatively frame the same argument as failure to state a claim upon which relief can be granted. Mot. at 21-22; Reply at 9. The Court rejects this for the same reasons as it does the ripeness argument.

unreviewable under 1252(a)(2)(B)(ii). 985 F.3d at 366. The court reasoned that the Secretary's discretion to grant work authorizations extended to discretion in implementing the statutory provision at all. *Id.* at 367. That is, "[t]he discretion afforded to the agency over how to address work-authorization requests means that consideration of every work-authorization request is not 'required' under *Norton* [*v. Southern Utah Wilderness Alliance*, 542 U.S. 55 (2004)]." *Id.* at 368-69; *see id.* at 369 ("As the agency is not required to adjudicate pre-waiting-list work authorizations, no agency action exists to compel.").

The Sixth Circuit differed in *Barrios Garcia* (decided shortly after the implementation of the BFD policy guidance). Explaining its disagreement, the court described the Fourth Circuit's reading as "front to back"—"i.e., USCIS may exercise its discretion to adjudicate a prewaitlist work-authorization application and then determine whether a U-visa application is pending and bona fide as a prerequisite to granting work authorization." 25 F.4th at 444. The better reading, the Sixth Circuit concluded, was "back to front"—"i.e., USCIS must determine whether a U-visa application is pending and bona fide before the agency 'may' grant work authorization to the petitioner." *Id.* The court was guided by the Supreme Court's similar back-to-front interpretation in *Weyerhaeuser Co. v. U.S. Fish & Wildlife Service*, 586 U.S. 9, 24-26 (2018).[8] The court found further support for its reading of the statute in the then-newly implemented BFD policy guidance, which specifies that "USCIS *first determines* whether a pending petition is bona fide" before exercising its discretion. *Id.* (quoting USCIS Policy Manual Ch. 5).

> Clearly, USCIS and we are on the same page: § 1184(p)(6) is properly read back to front à la *Weyerhaeuser*. USCIS must decide whether a principal petitioner's U-visa application is "bona fide" before the agency undertakes discretionary decisions about national security, public safety, and other relevant factors and before USCIS

---

[8] Defendants fault the *Barrios Garcia* court for its reliance on *Weyerhaeuser*, which it claims is "an inapt case that involved an entirely different bar to judicial review than the one Defendants raise here." Reply at 2. But Defendants misunderstand the nature and extent of the Sixth Circuit's reliance on *Weyerhaeuser*—despite differences, that case is instructive as to statutory interpretation.

makes more discretionary decisions to issue a BFD EAD and grant deferred-action status.  In other words, Section 1184(p)(6) is not a wholly discretionary statute. We thus do not read  § 1184(p)(6) as "specifying" discretion for § 1252(a)(2)(B)(ii) purposes.

*Id.* at 444-45 (citation omitted).

This Court is persuaded by the Sixth Circuit's back-to-front interpretation of the statute. The discretion granted by the statute applies to the decision to grant an EAD; the need to determine whether an application is pending and bona fide is a necessary prerequisite to that discretion. The BFD process flowchart clearly supports this reading. That document describes the *first* step in the process as answering, "Is the U nonimmigrant status petition bona fide?" followed by the *second* step of answering, "May USCIS issue a Bona Fide Determination (BFD) Employment Authorization Document (EAD) and Deferred Action?" U.S. Citizenship & Immigr. Servs., Policy Manual, Volume 3, Part C, Appendix: Bona Fide Determination Process Flowchart, https://www.uscis.gov/sites/default/files/document/policy-manual-resources/Appendix-BonaFideDeterminationProcessFlowchart.pdf; *see also* USCIS Policy Manual Ch. 4 (describing the BFD process as available for petitioners "with pending, bona fide U nonimmigrant petitions, who USCIS determines merit a favorable exercise of discretion"). Clearly the BFD must be made before any discretion regarding EADs comes into play. Accordingly, the BFD itself is not "specified . . . to be in the discretion of the Attorney General or the Secretary of Homeland Security," and review is not barred by 8 U.S.C. § 1252(a)(2)(B)(ii).

This determination does not end the inquiry, however. Defendants argue that the BFD claim is unreviewable because the BFD is a predicate determination that is part and parcel of the discretionary EAD determination, relying on *Patel v. Garland*, 596 U.S. 328 (2022). *See* Mot. at 9-11; Reply at 5. In *Patel*, the Supreme Court addressed the first clause of Section 1252(a)(2)(B), which prohibits review of "any judgment regarding the granting of relief under" certain statutes

not applicable here. The Supreme Court held that the phrase "any judgment regarding" as used in 1252(a)(2)(B)(i) includes factual findings made as part of proceedings under the enumerated statutes. 596 U.S. at 337-40, 347; *see also id.* at 337-38 (noting that the Court agreed with court-appointed *amicus*'s interpretation that the phrase "any judgment regarding" "encompasses any and all decisions relating to the granting or denying of discretionary relief"). Defendants urge this Court to extend the same broad reading to subsection 1252(a)(2)(B)(ii), the clause applicable here. Mot. at 9-11; Reply at 5 & n.1.

The Court declines to do so. The Court acknowledges that several courts of appeals have imported *Patel*'s broad reading of (i) into (ii).[9] But the Tenth Circuit is not one of them, and those out-of-circuit decisions are not controlling on this Court. And the Supreme Court recently recognized that the extension of *Patel*'s sweeping reading of (i) to (ii) is not a foregone conclusion: In *Bouarfa v. Mayorkas*, the Court noted that it "need not resolve whether § 1252(a)(2)(B)(ii) strips courts of jurisdiction to review threshold determinations that the agency must make before exercising discretion." 604 U.S. 6, 19 (2024).[10] Whether (ii) ought to be read in the broad manner of (i) per *Patel* is, therefore, an open question before this Court—one the Court answers in the negative. Subsection (ii) is not identical in language to (i). Had Congress intended (ii) to have as wide a reach as does (i) it could have used the same "any judgment regarding" terminology. *See Patel*, 596 U.S. at 338-39 ("[T]he use of 'regarding' 'in a legal context generally has a broadening effect, ensuring that the scope of a provision covers not only its subject but also matters relating

---

[9] *See Shaiban v. Jaddou*, 97 F.4th 263, 267 (4th Cir. 2024); *Zia v. Garland*, 112 F.4th 1194, 1200 (9th Cir. 2024); *Cheejati v. Blinken*, 106 F.4th 388, 394-96 (5th Cir. 2024).

[10] The Supreme Court issued its decision in *Bouarfa v. Mayorkas* on December 10, 2024, after the instant Motion was fully briefed. On February 28, 2025, this Court invited the parties to file supplemental briefs addressing the significance of *Bouarfa* as applied to this case. ECF No. 24. On March 5, 2025, the Parties filed a "Joint Statement Regarding the Inapplicability of *Bouarfa v. Mayorkas*, 604 U.S. 6 (2024)," indicating that the Parties agreed that *Bouarfa* was inapposite because "it dealt only with a review of the final discretionary decision," not with "timing issues." ECF No. 25. The Court, obviously, disagrees and believes *Bouarfa* is of some use here.

to that subject." (quoting *Lamar, Archer & Cofrin, LLP v. Appling*, 584 U.S. 709, 717 (2018))). In accordance with settled principles of statutory interpretation, Congress's failure to do so should be taken as purposeful. "[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Russello v. United States*, 464 U.S. 16, 23 (1983) (quoting *United States v. Wong Kim Bo*, 472 F.2d 720, 722 (5th Cir. 1972)); *see also Gallardo ex rel. Vassallo v. Marstiller*, 596 U.S. 420, 431 (2022). The Court thus "refrain[s] from concluding here that the differing language in the two subsections has the same meaning in each." *Russello*, 464 U.S. at 23.

Subsection (ii) prohibits review of "any other decision or action . . . the authority for which is specified under this subchapter to be [discretionary]." 8 U.S.C. § 1252(a)(2)(B)(ii). Under Defendants' interpretation, so long as some part of the decision-making process is specified as discretionary, then every other piece is automatically subsumed into that discretionary categorization and thus is likewise precluded from review. This reads too much into the statute. The more natural reading is that each "decision or action" is to be treated individually in determining whether it is mandatory or discretionary. Given the lack of the broadening "regarding" term used in the preceding subsection, and against the backdrop of the "well-settled," "strong," and "consistently applied" presumption favoring judicial review of administrative action, *Guerrero-Lasprilla v. Barr*, 589 U.S. 221, 229 (2020), the Court concludes that the BFD's status as a step prior to EAD determinations does not bring it within the ambit of 1252(a)(2)(B)(ii)'s prohibition on review.

Defendants also briefly argue that Plaintiffs lack standing to pursue their BFD claim. Mot. at 13. According to Defendants, a BFD "alone does nothing" absent the favorable exercise of

discretion to grant an EAD and deferred action, and so a court order compelling BFDs would not redress Plaintiffs' injury. *Id.* "The constitutional requirements for standing are (1) injury in fact, (2) a causal connection between the injury and the challenged act, and (3) a likelihood that the injury will be redressed by a favorable decision." *Roe No. 2 v. Ogden*, 253 F.3d 1225, 1228-29 (10th Cir. 2001). Here, although the BFD alone will not enable Plaintiffs to access EADs and deferred action, it is a necessary prerequisite to their doing so through the BFD process pathway. Thus, Defendants' delay in adjudicating Plaintiffs' applications and making BFDs injures Plaintiffs in the form of a lost opportunity to obtain those benefits—even though the process may not result in a favorable determination for any particular plaintiff. *See id.* at 1229-30 (holding that individual had constitutional standing to challenge bar fitness standards and procedures even though he may fail the bar exam); *Bryant v. Yellen*, 447 U.S. 352, 366-68 (1980); *N.M. Cattle Growers' Ass'n v. U.S. Forest Serv.*, No. CIV 23-0150 JB/GBW, 2025 WL 327265, at *74 (D.N.M. Jan. 29, 2025) ("[H]umane Farming's lost opportunity to rescue the Gila Cows is a concrete injury, regardless whether they would have rescued the Gila Cows successfully."); *see also Ecosystem Inv. Partners v. Crosby Dredging, L.L.C.*, 729 F. App'x 287, 292-93 (5th Cir. 2018) (noting "a well-established line of cases holding that loss of a non-illusory opportunity to pursue a benefit constitutes injury in fact"). A favorable ruling from this Court would redress Plaintiffs' injury by restoring the opportunity to obtain the benefit of EADs and deferred action. *See Patel v. USCIS*, 732 F.3d 633, 638 (6th Cir. 2013) (recognizing that the lost opportunity to seek a benefit is a cognizable injury in the immigration context); *Kurapati v. USCIS*, 775 F.3d 1255, 1261 (11th Cir. 2014) (same); *Mantena v. Johnson*, 809 F.3d 721, 731 (2d Cir. 2015) (same); *Shalom Pentecostal Church v. Acting Sec'y*, 783 F.3d 156, 162 (3d Cir. 2015) (same).

### 4.    *Employment Authorization Documents and Deferred Action*

Plaintiffs' claim regarding EAD determinations is likewise reviewable. Plaintiffs concede that the ultimate decision to grant or deny an EAD in any particular instance is discretionary, but argue that the requirement to make *a* decision, either way, is not. *See* Resp. at 5 ("Plaintiffs' claims are related to the undue delay in processing their petitions for U nonimmigrant status and making a bona fide determination, not relating to Defendant's ultimate discretion to grant or deny any interim benefits."); *id.* at 6 ("While the ultimate decision to approve or deny interim benefits may be discretionary, the APA still rules whether the adjudication of those benefits has been unreasonably delayed."). Defendants argue that, per statute, "the authority to grant EADs lies in the agency's discretion," Reply at 4-5, and that pursuant to their broad, *Patel*-based reading of 1252(a)(2)(B)(ii), that subsection includes the "pace of adjudication of claims" in its prohibition on review, *id.* at 5. *See also* Mot. at 7-8.

As the Parties agree, the decision of whether to grant an EAD to a particular applicant is inarguably a discretionary one. *See* 8 U.S.C. § 1184(p)(6) ("The Secretary *may* grant [EADs] to any alien who has a pending, bona fide application[.]" (emphasis added)). But USCIS does not have the discretion to choose not to adjudicate Plaintiffs' applications altogether. *See Segovia v. Garland*, No. 1:23-cv-1478-AT, 2024 WL 1223481, at *10-11 (N.D. Ga. Mar. 21, 2024). The Court has already rejected Defendants' proffered broad reading of 1252(a)(2)(B)(ii), *supra* Section III.B.3. Subsection (ii) prohibits review of any discretionary "decision or action." Failure to act on Plaintiffs' applications, or delaying unreasonably in doing so, is not a decision or action at all— that is, in fact, the very problem. *Cf. Iddir v. INS*, 301 F.3d 492, 497-98 (7th Cir. 2002).

Defendants collect cases from district courts outside of the Tenth Circuit in which the court concluded that 1252(a)(2)(B)(ii) barred review of the pace of adjudication of claims. Mot. at 8.

But those cases are only a fraction of the universe of relevant caselaw. Defendants make no mention of the numerous other district courts that have come to the opposite conclusion—that 1252(a)(2)(B)(ii) does *not* preclude review of such claims. *See, e.g.*, *Pulido v. Cuccinelli*, 497 F. Supp. 3d 79, 90 (D.S.C. 2010); *Doe v. Mayorkas*, No. 5:21-cv-01530-JMG, 2021 WL 5013738, at *6-7 (E.D. Pa. Oct. 28, 2011); *Khan v. Johnson*, 65 F. Supp. 3d 918, 924-25 (C.D. Cal. 2014); *Hosseini v. Napolitano*, 12 F. Supp. 3d 1027, 1031-33 (E.D. Ky. 2014); *Karim v. Mukasy*, No. 08-cv-00671-REB, 2009 WL 801732, at *3-4 (D. Colo. Mar. 25, 2009); *Zhou v. FBI*, No. 07-cv-238-PB, 2008 WL 2413896, at *2-4 (D.N.H. June 12, 2008); *Nigmadzhanov v. Mueller*, 550 F. Supp. 2d 540, 546-47 (S.D.N.Y. 2008); *Kashkool v. Chertoff*, 553 F. Supp. 2d 1131, 1137-39 (D. Ariz. 2008); *Kamal v. Gonzales*, 547 F. Supp. 2d 869, 873-75 (N.D. Ill. 2008); *see also Saulnier v. Garland*, No. 23-905 (BAH), 2024 WL 3566225, at *5 (D.D.C. July 29, 2024) (assuming reviewability).

As these courts have reasoned, the relevant statute affording discretion "does *not* address the pace at which USCIS must adjudicate" EAD applications, "[n]or does that section afford discretion to indefinitely delay adjudicating" such applications. *Doe*, 2021 WL 5013738, at *6 (internal citations omitted). Indeed, USCIS has a non-discretionary duty to adjudicate all petitions "within a reasonable time," per section 555(b) of the APA. 5 U.S.C. § 555(b); *see also* 8 C.F.R. § 274a.13(b)-(c) (stating that an EAD applicant "*shall* be notified" of a decision to grant or deny the application (emphasis added)). In sum, "[j]udicial review of a delay in adjudicating an application differs . . . from review of a discretionary final decision, and the APA and INA bar only the latter." *Saulnier*, 2024 WL 3566225, at *5. "To 'hold otherwise would be to sanction the

perpetual delay of governmental obligations that are clearly mandated by law.'" *Khan*, 65 F. Supp. 3d at 925 (quoting *Islam v. Heinauer*, 32 F. Supp. 3d 1063, 1069 (N.D. Cal. 2014)).[11]

Defendants also rely on an Eighth Circuit decision that they contend supports their argument that subsection (ii) "covers not only the final discretionary EAD decision under § 1184(p)(6), but the pace of that adjudicative process as well." Mot. at 8 (citing *Thigulla v. Jaddou*, 94 F.4th 770 (8th Cir. 2024)); Reply at 5-6 (same). But *Thigulla* is distinguishable. That case addressed a delay in adjudication of status adjustment applications where the delay itself was the product of a regulation and a publicly announced policy decision. 94 F.4th at 772-73. This background contextualizes the Eighth Circuit's characterization of the events at issue as USCIS's "decision to delay adjudicating" the applications. *Id.* at 775. That situation is markedly different from the present controversy. Plaintiffs here did not receive any communication from USCIS to the effect that the agency has "decided" to delay processing their applications—they've heard nothing at all. To describe such silence as a "decision" strains the meaning of the word.

Additionally, the foregoing analysis as to EADs extends equally to deferred action.[12] According to USCIS's BFD policy guidance, "If USCIS grants a noncitizen a [BFD EAD] as a result of the BFD process, USCIS then also exercises its discretion to grant that noncitizen deferred

---

[11] The Court has included its analysis of the reviewability of the pace of adjudication within the EAD section because there were independent grounds to find the WLD and BFD claims reviewable, but it bears emphasis that this analysis applies across the board—Plaintiffs' claims that USCIS has unreasonably delayed adjudicating WLDs, BFDs, and EAD applications are distinct from hypothetical challenges to actual adjudications, and are not barred by 1252(a)(2)(B)(ii).

[12] Defendants argue that deferred action decisions are barred from review by 8 U.S.C. § 1252(g), which states: "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." According to Defendants, deferred action "concerns" removal and so is unreviewable here. Mot. at 14. But the Supreme Court has made clear that 1252(g) "applies only to [the] three discrete actions" specifically named—not to the "many other decisions or actions that may be part of the deportation process." *Reno v. Am.-Arab Anti-Discrim. Comm.*, 525 U.S. 471, 482 (1999); *see also Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 19 (2020). The "narrow" bar of 1252(g), *Dep't of Homeland Sec.*, 591 U.S. at 19, does not apply here. *Uranga v. USCIS*, 490 F. Supp. 86, 97 (D.D.C. 2020); *Rodriguez v. Nielsen*, No. 16-CV-7092 (MKB), 2018 WL 4783977, at *6-7 (E.D.N.Y. Sept. 30, 2018).

action for the period of the BFD EAD." USCIS Policy Manual Ch. 5. Deferred action is an additional benefit that is simply tacked on to the EAD benefit; it involves no independent consideration or decision. Plaintiffs' claim seeking adjudication of their requests for EADs, like their WLD and BFD claims, is cognizable under the APA, is not barred by Section 1252(a)(2)(B)(ii), and withstands scrutiny at the motion to dismiss stage. Defendants' Motion is DENIED as to Plaintiffs' EAD claim.

### 5.    *Joinder*

Finally, Defendants argue that, should this Court decline to dismiss the action, it should sever and dismiss "the claims of all but the lead Plaintiff for improper joinder." Mot. at 22. Permissive joinder of parties is governed by Federal Rule of Civil Procedure 20(a). Plaintiffs may join in one action if (1) their claims arise out of the same transaction or occurrence, and (2) they share a common question of law or fact. Fed. R. Civ. P. 20(a). "Under the Rules, the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966). These requirements "are not rigid tests" but rather "are flexible concepts used by the courts to implement the purpose of Rule 20 and therefore are to be read as broadly as possible whenever doing so is likely to promote judicial economy." 7 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1653 (3d ed. 2015).

The Court finds that Plaintiffs satisfy both parts of the standard for joinder under Rule 20(a). As to the first prong under Rule 20(a), "'[t]ransaction' is a word of flexible meaning. It may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship." *Moore v. N.Y. Cotton Exchange*, 270 U.S. 593, 610 (1926); *see Mosley v. Gen. Motors Corp.*, 497 F.2d 1330, 1332 (8th Cir. 1974) (utilizing the

definition from *Moore* in the 20(a) context). Here, all Plaintiffs' claims arise from the "same transaction or occurrence" of USCIS's delayed actions in adjudicating their U Visa applications. Their claims arise from interactions with the same entity, USCIS, under the same statutes and regulations, pursuant to which their petitions are evaluated under the same criteria and policies. *Cf. Ray v. Cuccinelli*, No. 20-cv-06279-JSC, 2020 WL 7353697, at *2 (N.D. Cal. Dec. 15, 2020); *Al Daraji v. Monica*, No. 07-1749, 2007 WL 2994608, at *8-9 (E.D. Pa. Oct. 12, 2007); *Akhtar v. U.S. Dep't of Homeland Sec.*, No. 4:07-CV-421-A, 2007 WL 4445236, at *3-4 (N.D. Tex. Dec. 17, 2007); *Altowaiti v. Cissna*, No. 18-cv-508 (KBF), 2018 WL 11446810, at *2 (S.D.N.Y. June 11, 2018). The second part of the test, common question of law or fact, is easily met here. For one, each Plaintiff's claim involves the common question of law of whether USCIS has unreasonably delayed the processing of U visa petitions in violation of the APA. This alone is sufficient to satisfy the second prong of 20(a). *See Mahonak v. Rubio*, No. 8:24-cv-01443-FWS-DFM, 2025 WL 449044, at *11 (C.D. Cal. Feb. 10, 2025). Defendants argue that the various "unique facts" underlying Plaintiffs' petitions, Reply at 11, render joinder improper here. *See also* Mot. at 24. But Plaintiffs do not challenge substantive adjudications on their petitions; rather, their claims relate to USCIS's unreasonable delay in making a decision one way or the other. For these reasons, joinder of Plaintiffs is proper under Rule 20(a).

Defendants urge the Court, should it find that Plaintiffs have met the Rule 20(a) factors, to nonetheless refuse joinder. Mot. at 25-26. They argue that joinder here would not promote trial convenience and expediency. *Id.* at 26. As a preliminary matter, the number of plaintiffs in this case has been greatly reduced from when Defendants first made their request—from thirty-two down to nineteen. This necessarily diminishes the force of any of Defendants' arguments as to inconvenience or other difficulty. In any event, considerations of fairness and the need to promote

judicial economy clearly militate in favor of Plaintiffs here. Joinder of Plaintiffs' claims prevents unnecessary multiplication of litigation. Accordingly, Defendants' request to sever and dismiss all claims but those of the named Plaintiff is DENIED.

## IV.    CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss, ECF No. 7, is **DENIED**.


_____
**MARGARET STRICKLAND**
UNITED STATES DISTRICT JUDGE